Jackson v. McNabb et al.

Affirmed.

JACKSON v. McNABB ET AL.

<div style="float:right">39 111<br>61 195</div>

1. ADMINISTRATION : *Chancery jurisdiction.*

Chancery has jurisdiction to correct frauds and mistakes in administrations which impede a just distribution of the assets of an estate, and to uncover assets which can not otherwise be reached ; but its powers are ancillary, and the fund when recovered must be for the common benefit according to the prescribed class. It has no power to order distribution to particular creditors, even if the others are not before it seeking its aid.

2. CHANCERY PRACTICE : *Creditors' bill to recover assets of an estate.*

A bill by a creditor of an estate to uncover assets and apply them to the payment of debts should be in behalf of all the creditors of the same class or it will be demurrable; but it would not be error in such case for the court, under the prayer for general relief, to place the fund in a tribunal where the plaintiff might, with others, share it *pro rata.* Any decree rendered must be for the benefit of all probated claims according to class, and they must all share the expenses of the litigation, including reasonable attorney's fees, to be paid out of the fund recovered.

3.  SAME:  *Same:  How far conveyance set aside:   For what fraudulent
      purchasers must account.*

   In an action in equity by a deceased's creditor, to set aside his fraudulent
      conveyance of lands to purchasers cognizant of the fraud, they will be
      held to account for the value of all the lands sold by them to innocent
      purchasers, and for all rents received; but the conveyance will be set
      aside only as against creditors whose claims have been probated, and
      any surplus of proceeds of the lands, after payment of the probated
      debts, will be returned to the purchasers.

APPEAL from *Green* Circuit Court in Chancery.

Hon. L. L. MACK, Circuit Judge.

*J. E. Riddick*, for appellant:

The answer of defendants, not denying notice down to
time of paying purchase-money (and which was never
paid), is clearly bad.   *Byers v. Fowler, 12 Ark., 218; Massie
v. Eugart, 32 Ark., 251.*

Courts of equity have discretion to determine rights of
parties, notwithstanding the lapse of time, when the facts
are susceptible of being clearly ascertained.   Plaintiff was
not barred by limitation.   The statute does not run till a
party has a right to apply to a court of equity for relief;
until plaintiff has recovered judgment, and was able to
show that Wright's estate was insolvent, the conveyance,
however fraudulent, was a matter with which he had
nothing to do.   *Meux v. Anthony, 11 Ark., 411; Williams v.
Bizzell, ib., 718; Eyre v. Beebe, 28 How., 333; Gates v. An-
drews, 37 N. Y., 657.*

This, being a suit to set aside title to land, would not be
barred until after seven years' adverse possession (*sec. 4113,
Gantt's Digest*); the fraudulent vendee and those holding
under him without notice must show actual and adverse
possession the full period of the statute.   *Belt v. Raguel,*

*27 Texas, 471; Jones v. Read, 1 Humphrey, 335; Blanton v. Whittaker, 11 ib., 313; 2 Story's Equity Jur., sec. 1521.*

Argues from the facts that there were no laches.

*J. C. Hawthorne* and *B. C. Brown,* for appellee:

"When a party seeking redress, is apprised of his rights, or if fraudulently concealed, whenever the fraud is discovered, or might reasonably have become known, he must assert his rights within the period limiting the analogous remedy at law," etc.   *   *   *   *Taylor v. Adams, 14 Ark., 62; Davis v. Tarwater, 15 Ark., 286, 296.*

Plaintiff's claim was barred in five years; the time had expired, and he was guilty of laches in not bringing suit. The rule that only a judgment creditor can attack a fraudulent conveyance has several well-defined exceptions, and one of the plainest is, that it does not apply in case of death of the debtor before judgment. *Bump on Fraud. Conv., 528,* and cases cited.

This is not an action for the recovery of land, but only a proceeding to recover his debt, and must be brought within the time limited by the statute. *Watkins v. Trapnall et al., 15 Ark., 73; Byers v. Engles, 16 ib., 543; Doswell v. Adler, 23 ib., 82.*

*J. E. Riddick,* in reply :

Cites *Phelps & Jones v. Jackson, Admr., 27 Ark., 585,* to show that a creditor, before coming into court for relief against a fraudulent conveyance, should be able to show that his claims against an estate have been reduced to judgment.

Appellant's claims were allowances in the Probate Court, having, according to *section 113 Gantt's Digest,* the force and effect of judgments, and not barred for ten years at least.

EAKIN, J.    This is a suit by Jackson, a creditor of the estate of Morris M. Wright, whose claims have been allowed and classified, to set aside, as fraudulent, a conveyance made by Wright in his lifetime, of all his real estate, and to hold certain purchasers from the fraudulent vendee, with notice, liable for rents and profits during occupancy, and for the value of portions of the lands which had been sold by them to innocent purchasers; and that such proceeds, as well as the lands themselves, remaining unsold, be applied to complainant's debt, and for general relief.    The widow and heirs of Wright, with his administrator, are made parties, although none appear and answer, save the purchasers, against whom the relief is prayed.

Upon the answers, which but imperfectly deny many of the material allegations, and upon the proof, the cause was heard.    The Chancellor found that the original conveyance was fraudulent, and that certain of the defendants who had purchased of the fraudulent vendee, or obtained title from him, to wit, Ratcliffe, Crowley, Glasscock and Thomas, had notice of the fraud.    Yet the court dismissed the bill upon the ground that the complainant had slept upon his rights until laches could be fairly imputed to him.    From this he appeals.

It is not seriously contended upon either side that the finding of the Chancellor, as to fraud and notice, was erroneous.    Without resort to the evidence, enough is disclosed by the pleadings to fix the character of the conveyance as constructively if not actually fraudulent, and to charge the purchasers from the vendee with notice of its character.

They were not, indeed, all immediate purchasers from the vendee.    The property was all conveyed by him to Thomas, who, on his part, conveyed to Ratcliffe and Crowley, who conveyed a part to Glasscock.    Yet the convey-

ances were the result of a previous agreement, and the notice attaches to all. We will not question the findings of the Chancellor upon these points, but proceed at once to the question of laches, upon which the decree turned.

The fraudulent conveyance was made on the thirty-first of March, 1874, when the debts due complainant rested still upon contract alone, and had never been ascertained by any judgment. He could not immediately have proceeded by creditor's bill or otherwise to have set it aside. In two weeks afterwards Wright was killed. The claim of complainant was duly presented to be allowed in the fourth class, and another of Thorn and brother, which complainant afterwards obtained by assignment, in time to be allowed in the third class. So far this was due diligence. He might well have hoped, and seems to have had grounds to expect, that he would obtain satisfaction out of the estate without attacking the conveyance, and in such case it would have been his duty to refrain.

From the transcript it appears that there came into the hands of the administrator of Wright assets of the nominal value of $9,716.83. All the allowances against the estate did not, in the aggregate, exceed $2,600. Besides, all the real estate in controversy came into the hands of the administrator, and so remained, as apparent assets for the augmentation of the fund, until the month of September, 1875. The fraudulent vendee, McNabb, had left the State, and did not seem, meanwhile, to be setting up any claim; at least was taking no step to do so. Indeed, he never did. He was sought out, at considerable expense by Thomas, one of the defendants, and his claim was purchased for the benefit of Thomas and his associates in the speculation. Upon his return, Thomas demanded possession, and induced the administrator to yield it.

It is true that the first settlement, as confirmed at the Octo-

ber term, 1876, revealed the fact that most of the nominal assets, consisting of notes and accounts, had either proved worthless or been absorbed by off-sets.    It showed in the administrator's hands only a balance of $1,229.61.    The lands were also gone, and held adversely.    It was then fairly enough apparent that complainant's debt would not, in regular course of administration, be paid in full, and he might properly have begun his suit.    Doubtless a very diligent creditor would have done so.

But the lands were permanent, and the holders were making no improvements of any estimable value.    There was still a considerable, though inadequate, amount in the hands of the administrator, and it was not unnatural for a creditor, averse to litigation, to await a reasonable time for further developments.    The second annual settlement showed an almost total evaporation of the nominal assets, leaving only a trifling amount, compared with the aggregate of debts.    This suit was begun within four months after its confirmation.

Neither the claims nor the proceeding *in rem* to subject the lands were barred by the statute of limitations.    The first, after allowance, are never barred, and the second depends on seven years' adverse holding.    Laches can not be measured by any definite time.    Generally, but not strictly, courts of equity, in determining it, regard the analogy of the statute of limitations.    It depends upon the circumstances of each particular case, such as great changes in the condition of property, probable loss of evidence, or such seeming acquiescence as might bring into play the principle of equitable estoppel.    Sometimes these circumstances, accompanied with unreasonable delay, even within the period of limitation, will constitute such laches as to repel an original equity, and cause a court of chancery to refuse relief.    But we fail to see, in this case, any such

elements, and think the Chancellor, in taking such view of it, was mistaken.

As the case must be remanded, we deem it useful and proper to indicate the views of this court with regard to the future proceedings.

The case of *Clark, Admr., et al. v. Shelton, 16 Ark., 474,* very nearly resembles this, in all respects, save that the bill was filed in behalf of all the creditors and the prayer was for the general relief of all. The court below, however, gave relief out of the uncovered assets to the complainant alone. In a very lucid and able opinion, delivered by Justice WALKER, this was held to be erroneous. He remarked that "upon the death of the intestate, his estate became at once charged with the payment of *all* his debts, to be paid under our statute according to class, *pro rata.*" And he adds further, that "there was no reason why, as between the creditors of the estate, the *whole* of the assets, as well as those found to be due upon the settlement" (in the Probate Court), "as well as the $1,400" (the amount recovered in chancery), "should not be considered as one fund out of which to pay *all* the claims." This certainly is the only proper principle with regard to the estates of deceased persons, with regard to which the Constitution and statutes have established a fixed and certain tribunal for the exhibition of all demands, and within which all demands once exhibited, amount to a prayer for payment out of all assets which are, or may thereafter come, into the hands of the administrator. They become, until released, standing claims to that extent, and all claimants of the same class must concede to each other equality in the distribution of all assets whatever. It would be repugnant to all just ideas of administration to allow particular creditors, by application to other tribunals, to eliminate particular assets from the common fund, and enjoy them exclu-

*1. ADMINIS-TRATION: Chancery jurisdiction.*

Jackson v. McNabb et al.

sively.   The powers of chancery may be well invoked, and often must be, to correct frauds and mistakes which impede a just distribution, and to uncover assets which can not else be reached ; but its powers are ancillary, and the fund, when augmented, must be for the common benefit, according to the prescribed class.   It has not the power, under our system of laws, to make distinctions in favor of particular creditors, even if the others are not there seeking its aid. It must take cognizance of the fact that all probated claims in the proper forum are standing prayers for a *pro rata* distribution out of any assets dropping into the estate, from any quarter, by whatever means.   Allowances differ, in one respect, materially from judgments.   They neither require nor permit the claimant to sue out execution before order of payment, and they rest in confidence that such order will be based upon all that comes to the administrator's hands, and that all must come to his hands which can be discovered or got in.

2. CHANCE-
RY PRAC-
TICE:
Creditor's
bill to re-
cover assets
of an es-
tate.

Although it is proper that all bills for the purpose should be filed in behalf of all creditors of the same class, and courts upon demurrer for that cause should require it to be done or dismiss the bill, yet it seems to us, from the nature of the case and the requirements of the law with regard to the disposition of the fund when recovered, that, under the prayer for general relief, may be included such relief as the court is authorized to grant, and it would not be error in such case to grant the peculiar relief of throwing the fund into a tribunal, where the complainant might, with others, derive the benefit of a *pro rata*.   Nevertheless, to preserve the symmetry of pleading, it will be well for the court, upon the return of this case, to direct the complainant to amend his bill in this regard, if he be advised so to prosecute it, or, otherwise, to dismiss; and any decree rendered must be for the benefit of all probated claims,

according to class, and which must also share the burden of recovery, including reasonable attorney's fees, to be paid out of the fund recovered. The equality, which is equity, must prevail throughout.

In the case above cited, this object was effected, under the directions of this court, by the Chancellor, who was ordered to make the distribution. Since then, from changes in the laws and Constitutions, and, most especially, by reason of section 34, of article 7, of the Constitution of 1874, this court has been careful to preserve the original exclusive jurisdiction over administrations in the Probate Courts, and, whilst sustaining the jurisdiction of chancery to aid them, have been jealous of all efforts to lift administrations out of them, and continue them in chancery. The doctrine which now obtains is, that equity may correct frauds and mistakes, in the proceedings of the probate as of all other courts, and may assist in reaching assets not recoverable at law. Yet, when the especial object is accomplished, the functions of equity end, and the administration must proceed upon the corrected basis, in the appropriate tribunal, according to its prescribed methods.

Reverse the decree and remand the cause, with instructions to cause the bill to be amended as indicated, and, upon that being done, to render a decree declaring the conveyances complained of void, save as to the vendees, without notice, of defendants Ratcliffe, Glasscock, Thomas and Crowley, and only as against the creditors of Wright's estate, whose claims have been duly probated, and only to the extent necessary to satisfy them in full. An account must be taken with the said defendants, charging them with the value of the lands sold by them respectively, and also for rents and profits which were received by them, or what they were reasonably worth during their occupancy. Let these sums be decreed to be paid to the administrator,

3. HOW FAR CONVEYANCE SET ASIDE:

For what fraudulent purchasers must account.

who is a party to the suit; to be taken by him when collected, and held under his bond, and accounted for in settlement with the Probate Court, and expended or distributed under its orders, in due course of administration—first deducting reasonable attorney's fees, and necessary outlays in the prosecution of this suit by complainant, both in the court below and here, which he must be directed to pay to complainant, accounting only for the balance. If the whole fund, added to that already in the hands of the administrator, should not be required for the payment of debts, with expenses of administration, the balance to be returned to defendants, in the proportion of their payments. Let the lands remaining in their hands be declared assets in the hands of the administrator, and under his control, for the payment of debts, so far as they may be necessary for the purpose, to be subjected to sale in the usual course of administration proceedings, otherwise to remain the property of defendants; and let such other and further proceedings be had, as may consist with this opinion, and the principles and practice in equity.

[NOTE.—That, pending this cause here, the death of Ratcliffe was suggested and shown, and the cause, before submission, was revived against his widow, administrator and heirs, who have been brought in, and will take his place in future proceedings, according to their respective rights in his real and personal property.]