## STEELE *et al.* v. KELLEY *et al.*

No. 1506. Opinion Filed February 6, 1912.

Rehearing Denied April 9, 1912.

(122 Pac. 934.)

1. **STATUTES — Construction — Adoption of Provisions Previously Construed.** It will be presumed that Congress, in adopting the statutes of Arkansas for the Indian Territory, adopted them with the construction and interpretation that had been placed on them by the Supreme Court of Arkansas prior to their adoption by Congress.

2. **JUDGMENT—Equitable Relief—Power of Court.** Under the law in force in the Indian Territory prior to statehood, courts of equity possessed an inherent power to set aside the orders and judgments of probate courts for fraud; or if such state of facts and circumstances was presented as showed the irreparable injury impending, against which the probate court could grant no relief, courts of equity might interpose, but not for mere errors, however gross.

3. **SAME—Territorial Courts—Presumptions as to Jurisdiction.** The United States Courts in the Indian Territory were courts of superior jurisdiction; all presumptions were in favor of their action; and all irregularities in the exercise of their jurisdiction in probate proceedings, rightfully acquired, were cured by final judgment, and not open to collateral attack.

4. **EXECUTORS AND ADMINISTRATORS — Lands — Sales Under Order of Court—Validity.** A sale of real estate made in the Indian Territory, belonging to the estate of a deceased person, made by a duly appointed administratrix, upon a petition therefor filed, but without notice of the application being given as provided by the statute, and where it further appears that the petition is de-

ficient in form, though in substantial compliance with the statute, and where the sale has been confirmed, is not void, however erroneous.

5. **SAME.** A sale, made as above set forth, will not be set aside in a direct proceeding instituted for that purpose, unless it be shown that actual fraud was committed, or that there existed some other ground of acknowledged equity jurisdiction. Defective allegations in the petition for an order of sale and failure to publish notice of such application, while they may be gross irregularities, alone will not afford grounds for equitable interference, where a sale made thereunder is free from actual fraud or other grounds of equity jurisdiction, and where the sale has been regularly confirmed.

6. **JUDGMENT—Conclusiveness—Persons Concluded.** K. and S., pretermitted heirs of S., deceased, having invoked the jurisdiction of the United States Court for the Indian Territory, sitting in probate, against certain orders made in the probate proceedings in which they were interested, and having obtained an order of distribution, though not the character of relief sought, but being such as the court, under sections 6500 and 6501, Mansf. Dig. (sections 3572, 3573, Indian Territory Ann. St. 1899), had, upon proper showing, authority to make, and it not appearing that any exceptions thereto were saved, and it further not appearing what was done in the matter of complying with the order of distribution, held, that such heirs were bound by the decree of distribution.

(Syllabus by Sharp, C.)

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

Action by Laura Kelley and another against Julia Scruggs, and against Julia Scruggs, as guardian of Lewis H. Scruggs, Jr., and others. Judgment for plaintiffs, and defendants bring error. Reversed, with instructions to dismiss petition.

*John E. Lydecker* and *C. A. Steele,* for plaintiffs in error.

*J. H. Wood* and *Charles Richardson,* for defendants in error.

Opinion by SHARP, C. On September 18, 1908, defendants in error filed in the district court of Rogers county their petition, seeking the cancellation of a certain deed made to plaintiffs in error, S. S. Steele, M. A. Steele, Stephen A. Towers, and Richard M. Gorey, by Julia Scruggs, administratrix of the estate of Lewis H. Scruggs, Sr., deceased, and to require said Julia Scruggs to give bond as required by law, and for other relief. Upon issues

joined the case was, by agreement of counsel, tried before the court without the intervention of a jury. At the conclusion of the testimony, plaintiffs obtained leave of court, and over the objection of defendants filed an amended petition, setting up substantially the same facts, and the prayer of which amended petition asked that the deed be surrendered, canceled, set aside, and held for naught; that the title to plaintiffs in the lands therein described be quieted; and that all the orders, acts, and decrees of the United States Court in ordering the sale of said property, the assets of the estate, and confirming such sale, and in directing the execution of a deed thereto, be set aside and held for naught, and for other relief. The judgment of the court was in favor of the plaintiffs, and concluded as follows:

"Wherefore it is ordered, adjudged, and decreed that the deed referred to in plaintiffs' amended petition be surrendered, canceled, set aside, and held for naught, and that the title of the plaintiffs to the lands described in the amended petition be quieted, and that all orders, acts, and decrees of the United States District Court in and for the Northern District of the Indian Territory, in ordering the sale of the property herein described and confirming said sale, are hereby set aside, and held for naught, and that the plaintiffs recover their costs herein."

Motion for a new trial being overruled, the case is brought here for review, numerous errors being assigned, but one of which it is necessary to consider. Did the district court of Rogers county have the right and authority, under the pleadings and proof, to vacate and set aside the action of the United States Court for the Northern District of the Indian Territory, in the particulars set out in its decree?

Plaintiffs were the heirs at law of Lewis H. Scruggs, deceased. Their names were omitted from, and no provision was made for them in the will of Lewis H. Scruggs, deceased, made December 20, 1903. Under the provisions of section 6500, Mansf. Dig. of Ark., in force in the Indian Territory, as to plaintiffs the said Lewis H. Scruggs, Sr., died intestate. In other words, the will as to them had no binding force or effect. But this is not denied, and we turn to the real controversy—that of the right of

said pretermitted heirs after sale, by the administratrix, of the real property of the estate, to come into a court of equity and ask to have vacated and set aside the findings, orders, and judgments of a court of competent and exclusive jurisdiction, on the grounds assigned in their bill, and under the testimony offered in support thereof.

Chapter 1, Mansf. Dig. of Ark., was extended over and put in force in the Indian Territory by Act of Congress May 2, 1890 (U. S. St. at L., vol. 26, c. 182, p. 81), and which statute deals with the subject of administration. Prior to its adoption, various provisions of said chapter 1 had been judicially construed by the Supreme Court of Arkansas, and we must assume that this rule of construction was adopted by Congress at the time of its adoption of the statute. This is not only a familiar rule of construction, but one that has received express sanction by the United States Court of Appeals for the Indian Territory, the Circuit Court of Appeals for the Eighth Circuit, and the Supreme Court of the United States, and by this court as well as by the Criminal Court of Appeals. *McFadden v. Blocker,* 2 Ind. T. 260, 48 S. W. 1043, 58 L. R. A. 848; *Id.,* 3 Ind. T. 224, 54 S. W. 873, 58 L. R. A. 894; *Robinson v. Belt,* 2 Ind. T. 360, 51 S. W. 975; *Blaylock v. Incorporated Town of Muskogee,* 117 Fed. 125, 54 C. C. A. 639; *Robinson v. Belt,* 100 Fed. 718, 40 C. C. A. 664; *Sanger v. Flow,* 48 Fed. 152, 1 C. C. A. 56; *Robinson v. Belt,* 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65; *National Live Stock Commission Co. v. Taliaferro,* 20 Okla. 177, 93 Pac. 983; *Hawkins v. U. S.,* 3 Okla. Cr. 651, 108 Pac. 561; *State ex rel. Sims v. Caruthers,* 1 Okla. Cr. 428, 98 Pac. 474.

In *Robinson v. Belt,* 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65, in passing upon this question, it is said in the syllabus:

"The courts of the Indian Territory are bound to respect the decisions of the Supreme Court of Arkansas, interpreting laws of that state, which were adopted and extended over the Indian Territory by the Act of Congress May 2, 1890."

The sale and other orders complained of were made by the United States Court in the Indian Territory, prior to statehood; hence the rule of construction announced is binding upon this

court. *National Live Stock Commission Co. v. Taliaferro,* 20 Okla. 177, 93 Pac. 983.

In *Rogers et al. v. Wilson et al.,* 13 Ark. 507, the complainants, heirs at law of decedent, had no notice of the application for an order to sell certain lands of the estate, and an action to enjoin the sale was instituted and sustained on the ground of actual fraud. The court, however, among other things, said:

"And although it was clearly erroneous to have granted the order for the sale of the real estate without first having given the notice required by the statute, the order was not void, because it was made in a proceeding *in rem,* for the sale of the estate, which, by our statute, is made assets in the hands of the administrator, and over which by petition the probate court had jurisdiction, and further, and although after the sale of the said property shall have been made, the court might not feel at liberty in most instances to disturb the sale, but would leave the heir, if aggrieved, for his recourse over against the administrator, yet before the sale, there can, we apprehend, be no very good reason why the administrator cannot be restrained from perpetrating the wrong complained of."

In *Reinhardt's Adm'r v. Gartrell,* 33 Ark. 727, a bill was filed by the devisees and legatees under the will, against the executor and his sureties. Fraud in the settlement was charged, and it was sought to have the settlement reopened and the account of the executor restated. The court having called attention to the fact that under the Constitution of 1874 probate courts were reinvested with exclusive, original jurisdiction in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians, etc., the chancellor, upon the hearing, found the administrator amenable to the charge of fraud in five particulars, and ordered that the settlement of the executor should be set aside and held for naught and his accounts restated. Thereupon the matter was referred to the master, with directions to charge the executor with the amount of all assets which came to his hands, and credit him with all payments legally made, and all unavoidable losses, if any, etc. In accordance with this order, the master proceeded to state the whole account *de novo,* reforming it in all respects according to his views of the law and

the weight of evidence, as well as with regard to matters not found by the court to be fraudulent, as with regard to those that were. The report was approved, save as to certain exceptions, and a decree was rendered against the executor and his sureties *in solido* for the amount found in his hands, etc. In reviewing the decree, the court observed that mere error or irregularity in matters within the jurisdiction of the probate court, not tinged with actual *mala fides,* ought to be corrected only on appeal; that excessive allowances for commissions or attorney's fees, or illegal credits, were simply erroneous, voidable on appeal, but not fraudulent or void; and so with regard to mistakes and omissions. They may be the result of accident, entirely consistent with good faith. The question there was: Ought the restatement of account have been confined solely to matters adjudged fraudulent, or was it proper to open the whole matter anew, to embrace the action of the executor during the period of more than ten years, without any regard to the matters adjudged by the probate court? With reference to the jurisdiction of a court of chancery in such cases, the court said:

"With regard to the latter class, and in view of the constitutional dignity of our courts of probate, there are high considerations of public policy which require that the intervention of courts of chancery should be restricted to and limited by the necessities of each particular case. Their power should be invoked only for the particular occasion, and invoked only for correction. The exclusive jurisdiction of courts of probate would fall speedily into contempt if the discovery of a few errors of a fraudulent nature could be made the ground in chancery of sweeping away all that has been properly adjudicated, taking control of the whole subject-matter as upon appeal, and of hearing *de novo,* and overruling the decisions of the probate court with regard to matters concerning which no fraud was alleged, and upon which parties may for years have rested."

The decree was reversed.

In *Janes et al. v. Williams,* 31 Ark. 175, the plaintiffs, heirs at law of the deceased, filed their bill of complaint in the circuit court for the final settlement and distribution of the estate of the

deceased, to which defendants demurred, and the demurrer was sustained, and the appeal dismissed. The court on appeal said:

"We have carefully considered this question. It is one which may have the most important bearing upon the final determination of the case. And, after the most mature consideration, we are left the alternative of holding either that, however irregular the proceedings may have been in admitting the evidence adduced, or deciding it to be sufficient to establish the will and admit it to the record, as it was acted upon at the domicile of the testator, and in the county where most of the lands devised lay, and the judgment and decision of the court of probate, probating the will and admitting it to record, must stand until reversed or set aside, or to overrule the uniform series of decisions of this court for more than twenty years, and hold the orders and judgments of the probate court absolutely void." ·

The court held that it was unable to find such a state of case as would entitle the plaintiffs to relief.

In *Trimble et ux. v. James, Adm'r*, 40 Ark. 399, it was held that the order of the probate court, confirming an administrator's settlement, had the force of a judgment, and, if erroneous, could be corrected only by appeal, but that chancery might interfere to correct fraud or relieve against accident or upon some other ground of acknowledged equity jurisdiction, to prevent irremedial mischief; such interference extended only so far as to effect the object; and, further, that although the administrator's credits may be fraudulent in law, yet, if there was no actual fraud, there could be no relief in equity unless there had also been an injury.

In *Osborne et al. v. Graham, Adm'r, et al.*, 30 Ark. 66, the bill filed against the administrator and his sureties on his bond charged that money belonging to the estate was fraudulently applied to the purchase of land taken in the administrator's own name and individual right; that the lands thus purchased were equitably the property of the estate. It was held that the investigation of these facts and the proper decree for relief were proper subjects of chancery jurisdiction.   ·

In *Dyer et al. v. Jackoway et al.*, 42 Ark. 186, it was said:

"That chancery would interfere to correct fraud established, either by direct proof, or by such circumstances as would fairly authorize the inference of intentional fraud."

In *West et ux. v. Waddill et al.*, 33 Ark. 575, it was said:

"That there is an inherent power in equity to set aside the orders and judgments of probate courts as of all other courts, for fraud; or if such a state of facts and circumstances is presented as shows irreparable injury impending, against which the probate court can grant no relief, courts of equity may interpose, but not for mere errors, however gross."

In *Turner v. Rogers*, 49 Ark. 51, 4 S. W. 193, it was said by Cockrill, C. J.:

"The demurrer to the bill raises the question of the jurisdiction of a court of equity to enforce the collection of a claim probated against the estate of a deceased debtor, and which is still in course of administration, out of lands belonging to the estate. The jurisdiction of courts of equity in probate matters is more restricted in this state than it was under the English rule, before the establishment of our probate system, and it is less liberal than is now exercised by many of the states. See 3 Pom. Eq. art. 1154 *et seq.* With us the probate court has exclusive jurisdiction in the matter of the administration of the estates of decedents (article 7, sec. 34, Const. 1874), and it has frequently been determined by this court that equity has no power to lift the administration out of the probate court for the purpose of proceeding with it. *Reinhardt v. Gartrell*, 33 Ark. 727; *West v. Waddill*, 33 Ark. 575; *Mock v. Pleasants*, 34 Ark. 63; *Shegogg v. Perkins*, 34 Ark. 117; *Flash v. Gresham*, 36 Ark. 529; *Hankins v. Layne*, 48 Ark. 544, 3 S. W. 821. The equitable jurisdiction over the subject with us is not concurrent—it is rather auxiliary or ancillary and corrective—and can be exercised only when the relief afforded by the probate court is imperfect or inadequate, or where its proceedings have miscarried through fraud, accident, or mistake. There must be some special ground of exclusive equitable cognizance to warrant the interference of equity with the course of an administration. 'Courts of probate are not courts of chancery,' as was said in *Jones v. Graham*, 36 Ark. 385, 405, 'and they are not provided with the machinery to adjust the complicated matters with which equity deals. *Hall v. Brewer*, 40 Ark. 433. But they have power for all the ordinary purposes of administration, and the jurisdiction of equity exists only in matters which lie outside of or beyond their reach.'"

The court further said:

"To permit equity to interfere for the purpose of selling the lands, without some special reason, would be to allow it to exercise concurrent jurisdiction in the administration of the estate. But this is not permissible under our system. This view undoubtedly conforms to the prevailing rule, says Mr. Pomeroy (3 Eq. art. 1154, p. 107, note), in the great majority of states where power to sell land under the direction and control of the probate court is given to an administrator."

*Rogers v. Kennard,* 54 Tex. 30; *Davenport v. Ogg,* 15 Kan. 363; *Shegogg v. Perkins et al.,* 34 Ark. 117; *Jackson v. McNabb et al.,* 39 Ark. 111; *Nathan v. Lehman,* 39 Ark. 256; *Blevins v. Case,* 66 Ark. 416, 51 S. W. 65; *Mock et al. v. Pleasants,* 34 Ark. 63; *Brice v. Taylor,* 51 Ark. 75, 9 S. W. 854; *Borden et al. v. State,* 11 Ark. 519; *Marr, Ex parte,* 12 Ark. 88.

In *McLeod v. Griffis,* 51 Ark. 1, 8·S. W. 837, it was said that a bill to impeach the settlement of an administrator, which contained only general charges of fraud, accident, or mistake, without specifying of what the fraud, accident, or mistake consisted of, constituted no cause of action, and that the consent of the defendant that such charges might be investigated would give to a court of equity no jurisdiction to grant relief thereon except on such proofs as would sustain specific charges amounting to a cause of action.

Did the court below have jurisdiction of this case, for the reason that no notice of the application for the sale of the real estate, prior to making the order, was given? The question of the legal effect of such sales is one that has often been before the courts of Arkansas. The leading case is that of *Sturdy et al. v. Jackoway,* 19 Ark. 510, where it is said:

"That an order of the probate court for the sale of the real estate of a deceased person is a judgment *in rem,* and, being the judgment of a court of competent jurisdiction upon a set of facts within the scope of its legitimate powers, imports the necessity for the sale and cannot be adjudged and held for naught collaterally upon the ground that the court erroneously exercised its powers; nor can the proceedings and sale under such judgment or order, reported to and confirmed by the probate court,

be impeached collaterally; nor the title called in question for any omission in obtaining the order for sale or other irregularity."

The court there cites earlier cases arising in that state, among which was *Borden et al. v. State,* 11 Ark. 519, 44 Am. Dec. 217, in which it was held that:

"Jurisdiction of the probate court appearing as to the subject-matter, any irregularity in its proceedings—as for want of notice—was not a legitimate inquiry in collateral proceedings, however legitimate it might be upon a direct proceeding, as for error."

The court there proceeded upon the theory that, the probate courts having peculiar and exclusive jurisdiction of deceased persons, they must necessarily have jurisdiction of the incidents to the proper exercise of that jurisdiction; and when upon the one or the other their judgment may be, it cannot be a nullity, however erroneous, because within the scope of its legitimate powers.

In *Fleming v. Johnson et al.,* 26 Ark. 422, it was held that where a probate court has jurisdiction of the subject-matter, the papers, and proceedings in the case, and upon an order the sale is had, it is presumed to have been regular, and the purchaser at a guardian's or administrator's sale will not be bound to look further back than the order of the court, or to inquire as to its mistakes.

In *Montgomery et ux. v. Johnson,* 31 Ark. 74, it is said:

"Notice of the intended application it is evident could not have been given, nor could a list of sales of the personal property have accompanied the petition, for the record shows that the application was made the next day after the granting of administration. * * * The administration of the deceased person is committed to the jurisdiction of the courts of probate, and upon the grant of letters testamentary, or of administration, the court acquires jurisdiction of the estate and proceeds *in rem.*"

It was further said:

"In the above case of *Rogers v. Wilson* [13 Ark. 507], the sale was ordered, as in this, without notice of the intended application having been given, and the court say: 'Although it is clearly erroneous for the court of probate to grant an order for the sale of real estate without the notice of the intended applica-

tion therefor required by the statute having been given, the order is not void."

In *Aple v. Kelsey,* 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183, it was said:

"That the probate court of Arkansas is a court of superior jurisdiction; that all presumptions are in favor of its action, and all irregularities in the exercise of its jurisdiction rightfully acquired are cured by a final judgment, and not open to collateral attack."

And it was held that private sale of a decedent's estate by his administrator, upon order of the probate court for the payment of decedent's debts, was not void when confirmed. *Alexander v Hardin,* 54 Ark. 480, 16 S. W. 264; *Thorn et al. v. Ingram,* 25 Ark. 52; *Beidler v. Friedell,* 44 Ark. 411; *Spade v. Morton et al.,* 28 Okla. 384, 114 Pac. 724.

In *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433, it was held that a petition of a guardian for an order of sale of his ward's real estate need not show affirmatively that the ward resided in the county where it is filed in order to give the court jurisdiction. In this case the court said:

"As to titles conveyed by guardians on the Indian Territory side of the state under the statute there in force, the force of the decisions of the Supreme Court of Arkansas rendered prior to the adoption of the statute, and the rule of the Supreme Court of the United States, the court of final appellate jurisdiction of causes arising in that territory, would impel us, in the absence of fraud, to hold that the decree of confirmation made before the admission of the state cured all irregularities and errors that occurred after the court acquired jurisdiction by the filing of the guardian's application for order of sale, from which no appeal was taken."

The decisions of the Supreme Court referred to were *Grignon's Lessees v. Astor et al.,* 2 How. 319, 11 L. Ed. 283; *Mohr v. Manierre,* 101 U. S. 417, 25 L. Ed. 1052.

Does the cause at bar come within the rule in the foregoing controlling authorities? The amended petition, which, outside of the prayer, does not differ materially from the original, charges: That in procuring the issuance of letters testamentary to her, the said Julia Scruggs failed to mention the names of the plain-

tiffs; that, with intent to defraud said plaintiffs, said Julia Scruggs filed in court an application to be appointed administratrix of the estate of said Lewis H. Scruggs, Sr., deceased; that the clerk of said court did not require, and the said Julia Scruggs did not give, a bond as required by law; that said Julia Scruggs willfully and purposely, with intent to defraud plaintiffs and to mislead the United States Court, omitted from said application for administration the names of plaintiffs as heirs at law of said Lewis H. Scruggs, Sr., although the fact that said plaintiffs were living and the legitimate children of said Lewis H. Scruggs, Sr., deceased, was well known to said applicant for letters testamentary; that she, with the intent to defraud, represented to the court that she and her minor child, Lewis H. Scruggs, Jr., were the only heirs of said Lewis H. Scruggs, Sr., deceased, well knowing that said representations were false, and that thereby she procured said court, acting through its clerk, to issue letters of administration to her, without bond; that she thereafter filed a petition to sell the real estate belonging to said estate, a copy of which said petition is set out in the amended petition; that the allegations therein contained were false and misleading, and made for the purpose of misleading the United States Court, and to defraud plaintiffs; that said petition did not contain the allegations required by law for the sale of real estate by an administrator of a decedent's estate; and that by reason thereof the court in which said administration proceedings were pending never had or acquired jurisdiction to order the sale of said real estate, notwithstanding which such order was in fact made. The petition further charges that the sale was made to the plaintiffs in error, and reported to the court by the administratrix, and the report confirmed, and deed ordered executed, and thereafter approved; that plaintiffs had no notice either actual or constructive of said proceedings until long after the sale of said property; that the personal property of said estate was more than sufficient to pay all of the estate's indebtedness; and that the court in granting letters of administration, making the order of sale, and confirming the sale, and in ordering the execution of a deed to purchasers,

grossly abused its discretion by reason and on account of the fraud practiced on the court by the said Julia Scruggs.

All and singular of these allegations were denied by the answer of plaintiffs in error, and there is not one line of proof warranting the charge of actual fraud. The mere fact that the names of the plaintiffs were omitted from the application for letters testamentary is not inconsistent with an honest belief and intent on the part of the administratrix. These children were omitted from the will, and presumably the surviving wife believed the property would pass under the terms of the will, uninfluenced by any statute, of which she may have had no knowledge.

The fact that the application did not contain the names of these omitted heirs could not have influenced the action of the court in appointing an administratrix, with the will annexed, as section 7, c. 1, Mansf. Dig. (Indian Territory Ann. St. 1899, sec. 64), conferred upon her the right of priority to appointment under certain limitations therein named. On the trial the regularity of the appointment of the administratrix was conceded. We cannot ascribe to the administratrix any ulterior motive from the mere omission of the names of the plaintiffs, and, even if such motive did exist, it had been arrested long prior to the bringing of this action by the order of the county court of Rogers county. Neither was the failure to give notice of the application for order in itself an irregularity, unaccompanied by any proof of an evil or fraudulent intent, the equivalent of actual fraud within the meaning of the authorities cited, construing the statute under which the sale complained of was made.

We have carefully read and studied the entire record, and have examined the authorities in point at length, and fail to find any sufficient ground upon which a court of equity would have the right to annul and set aside the orders of a court of competent and exclusive jurisdiction. That such may be done in proper cases the authorities agree, but some of the well-recognized grounds in which equity lends its jurisdiction must exist before the district court can be adjudged to have jurisdiction of so sweeping and drastic a character.

Steele et al. v. Kelley et al.

While it is true that the courts of probate in Arkansas are the creatures of the Constitution, while the United States Courts in Indian Territory were but the creatures of legislative enactment, and while it cannot be said that the Arkansas Constitution can have any extraterritorial effect, at the same time, on the other hand, it may be observed that not only did the United States Court have probate jurisdiction but the same court as well had both common-law and equity jurisdiction, thus giving to it a jurisdiction far reaching and extraordinary in its nature.  Sections 6500 and 6501, Mansf. Dig., provide that pretermitted heirs shall be entitled to their proportion of both the real and personal property of the estate, as if the testator had died intestate, and that such children might recover from the devisees and legatees in proportion to the amount of their respective shares and the court exercising probate jurisdiction thereof should have power to decree a distribution of such estate according to the provisions of that and previous sections, and further provide for the enforcement of such recovery by writ of *scire facias,* and on the return of same the entry of judgment and the award of execution thereon.

Upon plaintiffs entering their general appearance in the United States Court in said administration proceedings, the county court of Rogers county, successor in probate matters of the United' States Court, at Claremore, refused to confirm the final report of the administratrix, overruled the demurrer of the devisees to the motion to vacate, and ordered distribution made to plaintiffs of their respective interests in the estate.  To this order no exceptions were taken nor appeal prosecuted, and it does not appear what has been done toward a satisfaction of this judgment. The court, having jurisdiction of the estate, had the power to decree distribution and to enforce payment, though we express no opinion as to the powers of the court to set aside its former orders as prayed for.

It is neither charged nor proved that the real estate sold did not bring its full value.  Neither is it shown that plaintiffs

have been injured in any way, or deprived of any of their legal rights, as the heirs at law of Lewis H. Scruggs, Sr., deceased.

For the reasons stated, the judgment of the court below, entered on the 22d day of July, 1909, should be set aside, and the cause reversed with instructions to dismiss plaintiffs' petition.

By the Court: It is so ordered.