## MOCK et al. vs. PLEASANTS.

1. PRACTICE IN SUPREME COURT: *When no appeal against a party.*
   Where no appeal is taken from a decree in favor of one of several parties the case made against him is not before the court.

2. ADMINISTRATION OF ESTATES: *Jurisdiction of courts in.*
   The probate court has exclusive original jurisdiction in matters of estates of deceased persons, and chancery can not take cognizance of such, except upon some one or more of the ordinary grounds of equity jurisdiction.

3. SAME: *Settlements in probate courts are judgments. How avoided.*
   A settlement of an administrator in the probate court has the force and effect of a judgment, and can be set aside only by a court of chancery for fraud.

4. FRAUD: *What it is, and how alleged.*
   Fraud is a term the law applies to certain facts as a conclusion from them, and is not itself a fact, and can not be charged in general terms. The facts and circumstances constituting it must be stated.

| 34 | 63 |
|----|-----|
| 55 | 224 |
| 34 | 63 |
| 60 | 477 |
| 34 | 63 |
| 61 | 580 |
| 34 | 63 |
| 63 | 282 |
| 34 | 63 |
| 77 | 355 |

Mock et al. vs. Pleasants.

5. WIDOW-ADMINISTRATRIX: *Takes rents as widow until dower assigned.*

A widow-administratrix is under no obligation to account for rents and profits of her intestate's plantation, until the assignment of her dower. They belong to her as widow, and not as administratrix. If creditors want them they should have her dower assigned to her.

6. ADMINISTRATION: *Illegal allowances not fraudulently obtained, not impeachable in equity.*

Mere illegal allowances to an administrator, not obtained by misrepresentation or deception upon the court, are no grounds for impeaching or setting aside a settlement, in equity. The proper remedy is by appeal to the circuit court.

7. ADMINISTRATOR: *Purchase by, a fraud.*

It is a fraud for an administrator to be interested in a purchase at his own sale, and equity will set aside the sale.

APPEAL from *Arkansas* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Judge.

*Gibson* and *Pinnell,* for appellants.

*Johnson, Carlton* and *Basham,* for appellees.

HARRISON, J.   The complaint in this case was filed by Moses Mock and other creditors of the estate of Joseph C. Pleasants, deceased, against Minerva A. Pleasants, administratrix of said decedent, Helen M. McDaniel, Annie W. Stewart, and George W. Stewart, her husband, Kate J. Pleasants, Andrew J. Miears and Green W. Boatright, and in substance alleged:

That said Joseph C. Pleasants died intestate, on or about the eighteenth day of December, 1862, seized of the following lands in the county of Arkansas: The southwest fractional quarter of section thirty, 145.45 acres; the northeast quarter of the northeast quarter of same section, 40 acres, in township six south, of range five west; the north half of section twenty-five, 320 acres, and the southeast fractional quarter of said section twenty-five, 74.59

acres, in township six south, of range six west, in all
580.40 acres, constituting and being the plantation known
as the Pleasants Place, and on which he resided at the time
of his death, and also possessed of considerable personal
property, leaving a widow, the said Minerva A., and the
said Helen M., Annie W. and Kate J., his children and
heirs at law.

That letters of administration upon his estate were
granted by the probate court of said county to the said
Minerva A., on the fifteenth day of June, 1866, before
which time there had been no administration; and at the
July term, 1869, of said court, she filed her first account
current, in which she charged herself with the amount of
the sales bill of the personal property, $704.50, as the whole
amount of the estate, and credited herself with divers
sums, to the amount of $145.37, as expended by her in the
course of administration, which account was, at the Jan-
uary term, 1869, approved and confirmed; and that the
court allowed her $70.45, ten per cent. on the amount of
the sale's bill for her risk and trouble.

That, at the April term, 1869, the court, upon the appli-
cation of said administratrix, and a showing by her that
the personal property was not sufficient to pay the debts of
the estate, made an order for the sale of the lands, direct-
ing the same to be sold on the third Saturday in May
thereafter, and for one-third of the purchase money cash,
and the remainder on a credit of twelve months, the pur-
chaser to give his note for the deferred payment, and a
lien therefor on the lands. But that, in her petition, the
said north half, and said southeast fractional quarter, of
section twenty-five, were said to be in range five, instead
of range six; and in the appraisement afterwards made,

in view of the sale, the southeast fractional quarter of section twenty-five was omitted.

That the other lands were appraised at ten dollars an acre, and, in pursuance of the order, those appraised were offered for sale on the day appointed, but that, not bringing two-thirds of the appraised value, were not sold, and the fact was reported to the court at the next, or July term, 1869; that no order, however, was made by the court that they should be again offered for sale at the end of twelve months thereafter, and to the highest bidder, and nothing further was done upon the application, or in respect to the sale, until, at the April term, 1872, when the administratrix presented a petition reciting the former order and proceedings under it, and praying an order to sell them, subject to her dower, to the highest bidder, or for what they might bring; which order the court made, directing that they be offered on the eighth day of July thereafter, for one-half cash and the remainder on a credit of twelve months, the purchaser, as required in the former order, giving a note and a lien on the lands for the deferred payment; but that the north half and the southeast fractional quarter of said section twenty-five were described in the last mentioned order as the *north half of the southeast fractional quarter* thereof.

That the administratrix accordingly, on the eighth day of July, 1872, again offered the lands, except the southeast fractional quarter of section twenty-five, at public auction, and they were bid off and purchased by the said Helen M. McDaniel, Ann W. Stewart and Kate J. Pleasants, at the grossly inadequate and nominal price of twenty-five cents an acre, and, on the same day, she executed a deed of conveyance of them to the purchasers; and that at the July

term, 1872, she made a report of the sale to the court, and the same was approved and confirmed.

That the sale was a mere sham, and a fraud upon the creditors of the estate, the result of a combination and collusion between the administratrix and the purchasers—that the lands might, as was the case, be bought in by the latter, who were her daughters, at such inadequate and nominal price—they were for her and their common use and benefit; that no part of the purchase money was paid or intended to be, and no note or lien was given, and that for that reason the administratrix did not file with her report of the sale an affidavit, that she was not the purchaser, and that they were not purchased for her use, and she was not in any manner interested in the purchase, as the statute requires.

That at the June term, 1873, of the circuit court of said county, then having jurisdiction in matters of administration, she filed a second account, in which she charged herself with the sum of $488.68—the balance in her hands according to the previous settlement, and claimed credit for divers sums as expended in the settlement of the estate— amounting to $548.10—the expenditures exceeding the assets $59.42; and this second account was, at the January term, 1875, of the probate court, approved and confirmed.

That said Anna W. Stewart, and her husband, George W. Stewart, on the eighteenth day of April, 1873, sold and conveyed her undivided interest in all the lands, or the whole of the plantation, to the defendants, Andrew J. Miears and Green W. Boatright; that afterwards a partition was made between the said Miears and Boatright and the said Helen M. McDaniel and Kate J. Pleasants, and the following parcels were allotted and set apart to Miears and Boatright, viz.: One hundred and ten acres of said section

twenty-five, bounded as follows: Beginning at the south-west corner of the northwest quarter of the section, and running east one hundred and five and two-thirds rods; thence north to the section line; thence west with the section line one hundred and five and two-thirds rods; thence south to the place of beginning; the southwest fractional quarter of section thirty; and thirteen and one-third acres of the northeast quarter of the northeast quarter of section thirty, bounded as follows: Beginning at the northeast corner of the section, and running west twenty-six and two-thirds rods; thence south eighty rods; thence east twenty-six and two-thirds rods; and thence north eighty rods to the place of beginning; that Miears, on the eighteenth day of September, 1873, sold and conveyed his interest to Boatright, and that Boatright was in possession of said parcels.

That the plaintiffs were severally creditors of the estate, and whose claims had been duly exhibited against it, and allowed by the administratrix, the aggregate of which was, exclusive of interest, $9,116.18, no part of which had been paid, and that they were the only creditors of the estate.

That the property of the estate was sufficient, if it had been honestly and faithfully administered, to have paid all the debts, the rents and profits of the plantation having, since the commencement of the administration up to the time of the partition, clear of all expenses on account of necessary and proper repairs, amounted to at least $3,500, and since then had been $1,200 per annum; that the administratrix had resided with her family on the plantation from the death of her husband until within a few months of the commencement of this suit, and had, except of the parcels sold to Miears and Boatright, since their purchase, appropriated the whole of the rents and profits to her own use.

That she had fraudulently omitted to charge herself, in her first account, with property of the estate which had come to her hands, nor had she charged herself with the same in her second, but of what it consisted was not stated, and had fraudulently claimed and received credit for the following sums, to which she was not entitled:   Twenty-five dollars paid R. A. Whitmore, esq , " *attorney's fees*," no authority having been given her by the court to employ an attorney; $16 *fees in replevin case*, and $12 *clerk's fees*, no receipt or voucher having been filed for either of the last two items; and illegally and fraudulently claimed $70.45 as commissions, which sum was allowed by the court, when she had, as shown by the account, only paid out for the estate, or administered the sum of $145.37.

That in her second account she fraudulently omitted to charge herself with the price for which the lands sold, and fraudulently claimed and received the following credits, to which she was not entitled : One hundred and seventy-five dollars paid W. P. McDaniel, the late husband of the said Helen M. McDaniel, and a member of her family, for *services rendered* and *money advanced for the estate;* $250 paid him for *work on gin-stand and gin-house,* and *other repairs on the place;* $25 paid him *expenses in going to Pine Bluff on business of the estate;* $65 paid said George W. Stewart for *work on cotton press;* and $10 her own *expenses, attending court in replevin case,* which last item she had before received credit for in her previous settlement; and that in neither of the accounts did she charge herself with any part of the rents or profits of the plantation.

That the sureties in her bond were R. M. Anderson and W. D. Dunn ; that Anderson was dead and his estate was insolvent, and that Dunn had been adjudged a bankrupt, and discharged from his debts; that she was herself insol-

vent, and that the court had, at the April term, 1871, required her to file a new bond, which had not been done.

That Miears and Boatright, when they purchased, resided in the county and near the residence of the administratrix, and were familiar with the matters of, and her management of, the estate, and had actual knowledge of the fraud in the sale of the lands.

The prayer of the complaint was, that the settlement of the administratrix, and also the sale of the lands, be set aside; that she be removed; that a commissioner be appointed by the court to take charge, and administer the estate under its direction; that she be required to account to him for the rents and profits of the plantation received by her, and for the other property she had not accounted for; that Miears and Boatright account for the rents and profits received by them, and that if the assets should not be sufficient to pay all the debts, that the same be paid *pro rata*, irrespective of the classification of the claims.

Boatright, at the September term, 1876, filed an answer, and also a demurrer to the complaint. The demurrer, being presented for consideration, was sustained, and the complaint, as to him, dismissed.

The other defendants, except Miears, also filed a demurrer to the complaint, upon the grounds that the court had no jurisdiction of the subject of the action, and the complaint did not state facts sufficient to constitute a cause of action; and the cause was, as to them, continued. Miears made no defense, but no decree was taken against him. At the next term, the demurrer of the other defendants was heard, and it was sustained by the court, and a decree thereupon rendered in their favor, dismissing the complaint.

From this last decree the plaintiffs appealed.

No appeal having been taken from the decree in favor of

Boatright, the allegations as to him, or his claim to part of the lands, are not before us for consideration.

The probate court has exclusive original jurisdiction in matters relative to the estates of deceased persons, and chancery can not take cognizance of such, except upon some one or more of the ordinary grounds of equity jurisdiction. *Const., Art. VII, sec. 34. West and wife et al. v. Waddill et al. MS. Opinion.* A settlement made by an administratrix has the force and effect of a judgment, and can be set aside only by a court of chancery on the ground of fraud. *Gantt's Dig., sec. 128.*

The allegation that the administratrix fraudulently omitted to charge herself, in her first account, with all the property of the estate, without stating what particular property was omitted, was not a sufficient averment of fraud. Fraud can not be charged in general terms, and without stating the facts and circumstances constituting it. Fraud is a term the law applies to certain facts, as a conclusion from them, and it is not in itself a fact. *Sto. Eq. Plead., 251; Bliss on Plead., 211; Conway v. Ellison, 14 Ark., 360; Ringgold v. Stone et al., 20 Ark., 526.*

A widow has the right to remain in and "possess the mansion or chief dwelling house of her late husband, together with the farm thereto attached, free of all rent, until her dower shall be laid off and assigned to her." *Gantt's Digest, sec. 2227.*

It does not appear that the dower of Mrs. Pleasants was ever assigned to her; it seems indeed that it had not been. She was under no obligations, therefore, to account for the rents or profits of the plantation. They belonged to her as widow, and not as administratrix. If the plaintiffs desired to have any part of them applied toward the

payment of the debts, they should have adopted the proper means to have had her dower assigned to her.

The complaint contains no averment that the allowances made to the administratrix upon her settlement were obtained by any misrepresentation or deception practiced upon the court. The facts, so far as anything to the contrary appears, were all before the court, and understood by it, and its decisions fairly made.

Mere illegal allowances to an administrator are no grounds for impeaching or setting aside a settlement. The proper remedy for such is by an appeal to the circuit court. Nor can it be said that the omission to charge herself in the second account with the sum the lands sold for was fraudulent. The court judicially knew that the lands had been sold, and the price they brought, and there is no room to presume a fraudulent purpose in omitting to charge herself with the price. As there was at the last settlement a balance shown in her hands larger than the cash payment, we may reasonably suppose it was her intention to charge it in her next account, and after the remainder of the money should be collected.

The charge of fraud in the sale of the lands was specifically made. The administratrix and her daughter, it was alleged, conspired together to have the lands sold and bought in by the latter at a nominal price, for her and their common benefit, and that the sale was the result of their conspiracy. Against such a fraud equity will always relieve. The fact that the administratrix was interested in the purchase was of itself alone such a fraud, as for which the sale should be set aside. *Wright Ex. v. Walker et al., 30 Ark., 44; West and wife et al. v. Waddill et al., MS. Opinion.*

The demurrer of the appellees should have been over-

ruled, and they should have been required to answer the complaint.

The decree is reversed, and the cause remanded for further proceedings.