DYER ET AL. V. JACOWAY ET AL.

1. ADMINISTRATION: *Chancery jurisdiction, to correct errors and frauds.*
   Chancery will not interfere for the correction of mere errors in the settlements of administrators in the probate court which could be corrected by appeal, nor of irregularities which, though illegal, were not of fraudulent intent, and have not resulted in substantial injustice; nor after a long period when explanations have become difficult, and evidences lost which in the nature of things might show matters which appear illegal on the record to have been really equitable. But it will interfere to correct fraud established either by direct proof, or by such circumstances as will fairly authorize an inference of intentional fraud.

2. SAME: *Same.*
   In the correction in chancery of frauds in an administrator's settlements in the probate court, his accounts will be surcharged and falsified, or set aside altogether, and settlements required *de novo,* as the case may require.

3. PLEADING: *Multifariousness; how corrected.*
   Multifariousness can not now, under the Code, be corrected by demurrer, but only by motion to strike out.

1. TRUST: *Trust funds may be followed, etc.*

If a trustee invests the trust fund, or its proceeds, in other property, the *cestui ques trust* may follow the fund into the new investment so long as he can identify the purchase as made with the trust property or its proceeds, although the trustee may have taken the title in his own name or the name of any other person.

5. TRUST: *Fraud: Administrator investing funds in improvements on wife's land: Relief.*

If an administrator invests funds of the estate in inprovements on his wife's land with her consent and connivance, equity will hold the property by receiver or injunction against alienation, for the security of creditors, distributees or sureties of the administrator, until final settlement of his account, and then apply it to their claims if he is in default.


APPEAL from *Yell* Circuit Court, in Chancery.

Hon. G. B. DENISON, Special Judge.

*John Hallum* for appellant.

Courts of chancery have jurisdiction and will exercise it to surcharge or falsify, re-state or set aside settlements of administrators for fraud. *33 Ark., 727; 34 Ib., 63 and 117.*

*Dodge & Johnson* for appellees.

1. The court had no jurisdiction. The administration was still pending in the probate court, and the parties had full and ample remedy there. (*Gantt's Dig.*, secs. *1183–4; Const., art. 7, sec. 34; 33 Ark., 592 and 728.*) Courts of chancery interfere only upon a clear showing of fraud. *34 Ark., 71.*

2. Review the thirty-one charges in the bill, and contend that they do not amount to fraud; that there were probably irregularities and mistakes which could have been corrected in the probate court, or by appeal, and cite *Gantt's Digest, secs. 91–2–3; 33 Ark., 582–3–4; 23 Ib., 94; 26 Ib., 377; 27 Ib., 596; 33 Ib., 728, 733; 34 Ib., 63; Ib., 127; 39 Ib., 117; 20 Ib., 526.*

3. As to the thirty-second charge, and seeking to subject Mrs. Jacoway's property, contend that:

First. As this suit was brought in the Danville District, and the property was in the Dardanelle District, the court had no jurisdiction. *Gantt's Dig., sec. 4532; Acts 1875, approved Dec. 15, 1875, secs. 3, 4, 5, 6 and 7; 39 Ark., 202,* and

Second. The bill is multifarious. *Sec. 4550 Gantt's Dig.; 1 Story Eq. Pl., sec. 271; Bliss on Code Pl., 289, 290, 292 et seq.; Newman Pl. and Pr., p. 265; 11 Ark., 726; 20 Ib., 22.*

EAKIN, J. Appellants, creditors of the estate of Samuel Dickens, deceased, on behalf of themselves and other creditors of said estate, filed this bill in 1878, against the administrator Jacoway, his sureties on his bond, and Mrs. Elizabeth D. Jacoway. The object of the bill was to set aside for fraud the settlements made by Jacoway in the probate court, to restate the accounts, to hold the sureties liable, and to subject to any decree to be rendered, certain real estate to which Mrs. Jacoway had legal title. A demurrer to the bill for want of equity was sustained, whereupon complainants rested. The bill was dismissed and they appealed.

The bill is long, containing thirty-one charges as to matters in the course of the administration alleged to be fraudulent.

It appears from the bill, which with regard to matters which should have been answered must be taken as true, that Dickens died intestate, on the second of March, 1867, and that Jacoway gave bond and was appointed his administrator. Claims to the aggregate amount of $23,597.62 were duly probated against his estate in favor of complainants and numerous other creditors, which to a great extent remained unpaid.

Dyer et al. v. Jacoway et al.

The administrator filed an inventory, and made several settlements of his accounts current, respectively, on the nineteenth of May, 1868; on the seventh day of July, 1869; on the fourteenth day of April, 1870, and the fifth day of July, 1871; all of which were approved and confirmed. Subsequently, on the fifteenth day of April, 1875, he filed a fifth settlement, in lieu of the four former ones, purporting to render an account and statement of all his administration down to that time, from the beginning, which was also duly approved and confirmed.

The jurisdiction of courts of chancery to interfere with proceedings for the settlements of estates in the probate courts, rests upon the same grounds with their interference with the judgments and proceedings of any other courts whatever. It does not rest upon any jurisdiction of the original subject matter, but upon this broad principle that courts of equity will not allow the proceedings of any other courts to be made the means of perpetrating successful frauds, or will relieve against accidents or mistakes which other courts could neither prevent nor cure, but which, unrelieved, would cause irreparable wrong and injustice. And the interference goes no further than is reasonably demanded by the necessity. When the fraud is corrected, or the impediment to justice removed, the other courts, if there be anything further to do, will be left to proceed with the subject matter of their respective jurisdictions, especially if it be peculiarly intrusted to them by the Constitution.

1. ADMINISTRATION: Chancery jurisdiction to correct errors and frauds.

Most usually the appeal is made to this power of equity courts in the settlement of estates, as to which probate courts have original exclusive jurisdiction. In this special connection, it has become the established doctrine that courts of equity should not interfere for the mere correction of errors which might be corrected on appeal, nor on

account of irregularities in settlements, which, although illegal, have been prompted by no fraudulent intent, and have resulted in no substantial injustice; nor after a long period, when explanations may have become difficult, and evidences have been lost, which, in the nature of things, might have shown things which appear illegal on the record to have been really equitable. Courts of probate are not, nor ever were, strictly speaking, common law courts. In England they were part of the system of ecclesiastical courts; and here within the range of the subject matters intrusted to them, they proceed upon equitable, as well as legal rules of right. Besides, the judges are not required to be learned in the technicalities of the law; it being far better that they should be men of sound, practical business qualifications, with a wholesome sense of right and wrong.

2. SAME:    Those who wish to confine them to the strict letter of the law, have ample opportunity to do so, by paying attention to all proceedings in which they have an interest, and filing exceptions, and taking appeals from erroneous rulings. If they do not, the peace of the community and the security of property, especially the safety of sureties, demand that they be not allowed, at pleasure, to object to anything which may be merely illegal or irregular, and demand new settlements, when it may, from loss of witnesses or destruction of documents, or failure of memory, be impossible to make them. On the other hand it has been equally well settled that if fraud be shown in a settlement, either by actual and direct proof, or by such an array of circumstances as will fairly authorize a Chancellor to infer intentional fraud, relief will be readily granted; and as the case may require, the accounts will be surcharged and falsified, or set aside altogether, and settlements required *de novo*. *West and wife v. Waddell et al.*, *33 Ark.*, *575; Reinhardt v. Gartrell, Ib., 734; Mock et al. v.*

*Pleasants, 34 Ark., 63; Shegogg v. Perkins et al., Ib., 117; Jackson v. McNabb et al., 39 Ark., 111; Price v. Peterson, 38 Ark., 496; Nathan v. Lehman et al., 39 Ark., 256; Trimble and wife v. James, 40 Ark., 393.*

In this case, of the thirty-one specific charges of facts which are assumed to indicate fraud, some of them, taken alone, have not that effect. Of this nature may be noticed the claim for attorney's fees, without having been authorized to employ an attorney; the failure of the administrator to charge himself with interest on money which came into his hands; the claim of commissions above that prescribed by law; and improper claims of credits for securities which might have been made useful. These, for example, are things generally wrongful, but which belong to the class of errors, and might have been passed upon by the probate court without any imposition practiced upon it, or intent to deceive. Even double credits, which constitute part of the specifications, might be in single instances the result of simple mistakes.

But there are charges of a much graver nature, which, if proven on hearing, would clearly indicate a fraudulent intent in the settlement, and which should be answered and denied, or explained. Without recapitulating all, it will be sufficiently illustrative to say that there are charges of large credits claimed and allowed of money, property at appraised value, and interest thereon, paid to the widow, without any corresponding charge against the administrator of these items. There are charges of credits claimed and allowed of insolvent notes, which had been actually paid to the administrator. It is charged that the administrator failed to charge himself with interest on the price of property sold for the estate, when bonds for the purchase money were taken bearing interest. There are many charges of like nature. They may be all answered, and, so

far as we know, successfully denied or explained, but taken for true, as they stand on demurrer, they afford sufficient ground to surcharge and falsify the accounts; or, if the Chancellor should be of opinion that the fraud pervaded all the accounts, of setting them aside altogether, and ordering an account *de novo*.

These matters should have been reserved for the final hearing upon all the pleadings and evidence, when the Chancellor might, with all the facts disclosed, determine whether or not fraud had been intended, and if not whether the illegal and irregular proceedings had wrought any injury of such a nature as to invoke the doctrine of constructive fraud. The demurrers of the several defendants should have been overruled.

There was a separate demurrer by Mrs. Elizabeth Jacoway, the wife of the administrator, as to whom only the thirty-second charge applies. She had nothing to do with the administration of the estate of Dickens. It is alleged that her husband, about the twenty-eighth day of December, 1868, was in embarrassed circumstances, and purchased a block of ground in the town of Dardanelle; which, with the intent and purpose of defrauding his own creditors as well as those of the estate of Dickens, he had conveyed to his wife with her consent; and that, afterwards, in December, 1874, he converted the sum of $6,957 belonging to the estate of Dickens to building a house upon it, she knowing and assenting to such use of the money. It is part of the prayer, in addition to the prayer that the administrator be held to a new account and that his sureties be held liable with him for a true balance, that the said block, with the house, be sold, and the proceeds be applied to the payment of the decree. Her separate demurrer, which was also sustained, is based upon the ground that the bill was multifarious; that as to this land the

court had no jurisdiction; that it acquired none of her person for the main purposes of the suit; and that the bill as to her showed no grounds of relief.

Multifariousness is not, now, ground of demurrer, since the Code. If the objection made upon this point be good it should have been taken by motion to strike out so much of the bill as affected her. Technically, at least, the court erred in sustaining her demurrer, unless the law be that the facts stated show no equity against her at all.

In the case of *Wheat et al. v. Moss et al., 16 Ark., 255,* it was held that where an administrator bought property with the funds of an estate, the distributees might follow the fund and take the property, or might subject it to the repayment of the money. And the same reasoning would apply to creditors entitled to the fund. This upon the ground of constructive trusts. The bill however does not make this case, as the charge consists with the supposition that the administrator originally bought with his own money. It is alleged, indeed, that he did so with the purpose of defrauding his own then existing creditors, as well as the creditors of Dickens' estate. His own creditors are not complaining, and it is not shown by the bill that in 1868 he was so indebted to the estate of Dickens as to preclude him from laying out his own money as he might please. No charges of fraud as against the creditors of the estate, such as would make him liable to them, are made with regard to his conduct of the administration at that period. It is not alleged that any judgment creditors of his then existed. With regard to the lot itself, we are of opinion that the bill does not disclose facts sufficient to show the original purchase to have been fraudulent as to creditors of Dickens, or that they have any equity to attack Mrs. Jacoway's original title. Can they subject it to a burden for the funds of the estate, which the com-

plainants allege were invested in 1874 in building a brick dwelling house upon the lot, with the knowledge, consent and connivance of Mrs. Jacoway? This amounts to an allegation that the trust fund can be traced into the improvements.

Although a husband, by his labor, skill and services, which creditors have no right to compel him to exercise for their benefit, may improve his wife's property to any extent without rendering it liable to his debts, there are nevertheless respectable authorities which hold that if he puts upon it money or property to which his creditors *have* a right, the property so improved becomes burdened in their favor to that extent, most especially if it be done with the knowledge, assent and connivance of the wife. (See conflicting cases cited and discussed in Mr. Bishop's work on married women, vol. 2, sec. 467 *et seq.*) It will be seen, on the other hand, that there are quite as respectable authorities which hold that the wife can not thus be improved out of her land. It is not necessary in this case to settle this somewhat perplexing question, inasmuch as this is in no view a bill by the creditors of W. D. Jacoway to subject his wife's estate to a burden for his debts. No creditors of Jacoway are complainants. The bill is by the creditors of the estate of Dickens, against Jacoway as his administrator, to compel a due and faithful administration of the trust, in order that they may receive from his hands the *pro rata* amounts which may finally be awarded them by the probate court. The administration is still pending, from all that appears, and the accounts, if re-stated and corrected, must still, in the present aspect of the case, be certified to the probate court, as the basis of proceedings to complete and close the administration. The complainants are in no correct legal sense creditors of Jacoway, and *non constat* that they will ever be, for it

may be that when forced to a true settlement, if that should be ordered, Jacoway may be able and willing to conform to any proper order for distribution, or his securities may do it for him.

The relief really sought is in the nature of that administered on grounds *quia timet*, and is indeed as much for the benefit of Jacoway's sureties as it is for themselves. It is based upon an allegation of a wrongful conversion of the means of the estate, endangering the specific fund out of which the creditors of Dickens' estate must be satisfied, and beyond which, faithfully administered, they have no right to look. Nor have they any concern as to the fraudulent conduct of Jacoway towards his own creditors, nor as to the relative rights of Jacoway's creditors and his wife, if they themselves shall receive from Jacoway, upon order of the court, all they are entitled to receive out of the assets of Dickens' estate. It would only be for a deficiency of that payment that they would have a right to require a sale of the property, in any view of the case, be it much or little; for their rights against Mrs. Jacoway could reach no further. In short, the object of the bill is to follow the trust funds into the land, and to bring them specifically as a fund back under the control of the probate court, to be ready for distribution on final order. I mean the only *proper* object of the bill. There is, indeed, a prayer for a decree in favor of complainants, for the sum of money found due on accounting, and that the lot and house be sold to pay the decree; but such relief would not be in accordance with the principles and practice of courts of chancery in estates not fully and completely administered. It would be to assume jurisdiction.

That trust funds wrongfully converted may be followed into other property as long and as far as they can be identified, is a well settled principle of equity. It is thus

announced by Mr. *Perry*, in his work *on Trusts, vol. 2, sec. 836:* "If the trustee invests the trust fund or its proceeds in other property, the *cestui que trust* may follow the fund into the new investment, so long as he can identify the purchase as made with the trust property or its proceeds, although the trustee may have taken the title in his own name, or the name of any other person."

The protection extended to married women, because of their incapacity to act *sui juris*, does not give them immunity against such connivance at the misapplication of the trust funds of others, for their benefit, as is charged in the bill. The case is different from that where a woman sees her husband, although in debt, spending his money in improving her estate. She may well suppose he intends that as a gift, or advancement, without any resulting trust.

The power of those interested in trust funds, to call in the aid of chancery to compel the proper execution of the trust, and the preservation of the fund, has never been questioned.

It is germane to the proper relief sought, that the court of chancery should reach forth its hand, not only for the better protection of the creditors of Dickens' estate, but for the protection of the defendant sureties, and hold the trust fund, which, by the confession of the demurrer, has gone into the land, until justice may be completely effected. Under the prayer for general relief, although an immediate sale would not be necessary, and might be very unjust to Mrs. Jacoway, inasmuch as it may never be required, and the property might be sacrificed, yet the court may by any of its ordinary schemes hold it to avail the final determination. This might be done through a receiver, or perhaps more equitably and less oppressively by interlocutory injunction, or a mere *lis pendens* might of itself suffice to prevent alienation.

To this extent there is equity in the bill as against Mrs. Jacoway, although final relief affecting her may depend upon contingencies. She is properly before the court in this regard, and subject to its orders.

The suit was properly brought in the forum of the administration. It is competent to the court, having the parties before it, to do full justice, and to that end it may make orders affecting real estate lying out of the district. The two districts of Yell County are as distinct counties. This by special statute.

The defendants are all called upon to answer, or the complainants should have a proper decree upon the allegations confessed. What final decree may be proper, will depend upon the issues made, and proof upon them, and the relief may be moulded, under the general prayer, in such manner as to protect, adjust and enforce the equities of all parties.

It was error to sustain the demurrers. Reverse and remand for further proceedings.