## FLOYD v. NEWTON.

### Opinion delivered February 6, 1911.

1. ADMINISTRATION—IMPEACHMENT OF SETTLEMENT IN EQUITY.—A complaint in equity seeking to impeach the settlement of an administratrix in the probate court for fraud, accident or mistake is insufficient if it alleges the fraud, accident or mistake in vague, indefinite and general terms, without specifying in what it consisted. (Page 462.)

2. SAME—HOW SETTLEMENT IMPEACHED.—A matter which the probate court has passed upon in the settlement of an account in administration cannot, in an equity proceeding to surcharge and falsify such account, be assigned as the result of fraud, accident or mistake, unless upon the statement of some fact or circumstance not considered by the probate court. (Page 464.)

3. SAME—HOW SETTLEMENT IMPEACHED AS A WHOLE.—To impeach in chancery the settlement of an administrator's settlement as a whole on the ground of fraud, accident or mistake, it must appear that the fraud, accident or mistake affected the entire action of the probate court, and that such court was the victim of the fraud, accident or mistake. (Page 465.)

Appeal from Union Chancery Court; *James M. Barker,* Chancellor; affirmed.

This suit was originally brought by Raymond Hudson against his mother, Mrs. S. E. Newton, and the sureties on her bond, to surcharge and falsify her settlements as the administratrix of the estate of her husband, John B. Hudson, deceased, father of Raymond Hudson.

On March 3, 1909, the death of Raymond Hudson was suggested to the court, whereupon R. L. Floyd was appointed administrator *ad litem,* and at the same time the death of Col. H. P. Smead was suggested, whereupon Mrs. Anna F. Smead and Mrs. Sula H. Powell, executors of his estate, were substituted as defendants.

The complaint alleges that the claims of all creditors against the estate have been satisfied in full, and that the administratrix has made final settlement and been discharged; that she failed to charge herself through accident or mistake with the appraised value of the personal estate, but deducted, without authority or right, therefrom the sum of $1,520.41; that she charged herself with 88 bales of cotton, not appraised, a certain sum, and that its true value was greater than said sum; that she took credit for a difference in the appraised value of 286 bales of cotton and the selling price, amounting to $2,059.20 without right; that she took sundry credits on many vouchers, giving their number, aggregating $1,269.37 without right in law or equity; that said sums were not paid on claims lawfully or justly chargeable against the estate, and that the same were never probated, and that she had committed a waste of said estate in paying said sums, and has paid them as the result of gross and reckless errors; that all said failure to charge herself and said unlawful payments were done in fraud or through accident or mistake or were gross or reckless errors.

The answer admits the appointment of administratrix and the giving of bond as alleged, denies that the administratrix has omitted to charge herself, through accident, mistake or otherwise, with any matters she was in law bound to charge; that she failed to charge herself with the appraised value of the estate

or deducted without right or authority the sum of $1,521.40 as alleged; admits that 88 bales of cotton were charged and not appraised, not being in her possession, having been shipped to New Orleans for sale as was customary, and sold at its cash value, and the sale reported and approved by the court; admits that the 280 bales of cotton was sold for $2,059.20 less than she is charged in the appraisement; says that said cotton was in New Orleans and in transit there for sale as was customary, when the appointment was made; that it was sold in due course of business for said amount less than the appraisement, all of which was submitted to the probate court, approved and the credit properly allowed; admits taking credit for $1,267.37 in first settlement as alleged and shown in the numbered vouchers and in the second settlement as charged; says they were for payments of claims justly chargeable against the estate, and all submitted to the probate court and passed upon and allowed, and are just and correct; denies having committed any wrong by any carelessness or error, and "further states that these matters were all just claims against the estate of John B. Hudson, deceased. They were considered in due course by the probate court of Union County, by it passed upon and allowed, and that its judgment is final;" also claimed Raymond Hudson was indebted to her in sum of $500 for board and clothing, and asked judgment therefor.

The testimony showed that the stock of goods and merchandise was appraised at $1,524.30, less amount due on same $546.72, and the administratrix charged with only the balance $977.66; that the 286 bales of cotton was appraised at $6,475.00, less amount due on same $973.77, and the administratrix charged with the difference $5,501.23; that 88 bales were never in her possession or appraised, but that they were sold in New Orleans at the market price, and all the money realized therefrom charged to the administratrix.

One of the appraisers testified that these deductions were made by the appraisers and the amount of same arrived at from the books of the deceased and from statements made by the manager and bookkeeper at the time, who was a brother of the appraiser; that Cliff Dearing had paid a debt of $150 to the estate in cotton, and that the administratrix could not remember

where it was accounted for in the settlement; that the amounts for which the vouchers showed credit had been taken in the settlement as charged in the complaint were all charged in the settlements against the estate, and credit taken therefor by the administratrix and passed upon and allowed by the probate court.

There was some testimony tending to show that an examination of the probate court records disclosed that no claims had been regularly probated and filed against the estate

The inventory and appraisement of the estate were duly filed and approved by the probate court. The settlements were made showing the credits claimed with the vouchers for the amount paid out. No exceptions were filed to either settlement, and each was duly and regularly approved and confirmed, and the administration closed and the administratrix regularly discharged on July 28, 1902. The court found that plaintiff failed to establish any of the allegations of the complaint, and dismissed it for want of equity, and he appealed.

*R. L. Floyd,* for appellant.

A clear case of fraud is shown, and the accounts should have been restated. Chancery has power to do this. 40 Ark. 401; 34 *Id.* 127; *Ib.* 71; 45 *Id.* 505; 33 *Id.* 727; 36 *Id.* 383; 53 Ark. 231; 50 Ark. 217.

*Powell & Taylor,* for appellee.

1. The facts and circumstances constituting fraud, accident or mistake must be stated. Story, Eq. Pl. 251; Bliss on Pleading, 211, 14 Ark. 360; 20 *Id.* 256; 39 *Id.* 158; 51 *Id.* 1.

2. There were no allegations nor proof that allowances were procured by fraud or concealment upon the court. 34 Ark. 63; 73 *Id.* 443; 61 *Id.* 1; 73 *Id.* 440; 68 *Id.* 492; 84 *Id.* 61

KIRBY, J., (after stating the facts). The complaint to impeach the settlement charged fraud, accident or mistake in such vague, indefinite and general terms, without specifying in what it consisted, that no cause of action was stated. *Mock* v. *Pleasants,* 34 Ark. 63; *Riley* v. *Norman,* 39 Ark. 158; *McLeod* v. *Griffis,* 51 Ark. 1.

Having been answered, however, and proofs introduced, we will examine the contention made here to ascertain whether there was such proof as would sustain spcific charges amounting to a cause of action.

Appellant insists that the settlement is impeached because the administratrix failed to account for all the assets of the estate and deducted two large amounts, $576.42 and $973.77, the sum of $1,520.49 in all, from their sales as shown in the appraisement, and that she also failed to account for a collection of $150 from Cliff Dearing. The appraisement on its face shows that the appraisers valued the assets, deducting said amounts due thereon, as follows:

Goods, wares and merchandise...........$1,524.30
Less amount due on same................   546.72   $  977.66
286 bales of cotton at $22.50............ 6,475.00
Less amount due on same................   973.77   5,501.03

It was filed and approved by the court, and the administratrix charged herself in the first settlement with the value of the stock of goods and the cotton after deducting the amounts due thereon as in the appraisement.

T. W. Williams, one of the appraisers, testified that these deductions were made by the appraisers in the appraisement as shown after an examination of the books of the deceased and a statement from the appraiser's brother, Jim Williams, now dead, who was manager for deceased and kept the books, disclosed that the said amounts were due and owing on the stock of merchandise and the cotton when the appraisement was made. The administratrix testified that she did not know why these deductions were made, that she couldn't explain them, that she didn't know of these conditions, that she had charged herself with all the assets coming to her hands, that Cliff Dearing paid what he owed in cotton, although she couldn't remember just where it was charged in the settlement, and her settlement shows 88 bales of cotton charged as having been received after the appraisement was made. She was not able to explain for what account certain amounts were paid for which she took credit and filed vouchers, but claimed they were just and correct and properly chargeable against the estate, as they were charged in her settlements with the vouchers showing the payments duly exhibited with the settlement. Closing her testimony, she said:

"My attorney has the vouchers, and he is not here, and I have no books to refer to, and it has been several years since these things occurred. There were a great many transactions

that I did not understand anything about. I depended upon the manager of the business. Jim Williams was manager until his death, then Garland Williams took charge, and when Garland got so he couldn't look after it I took Mr. McMath. In changing hands there was some loss each time."

Those amounts were shown to be indebtedness of the estate deducted in the appraisement from its value which could have been and doubtless were paid to the various creditors to whom they were owing upon the sale of the property, and this accounts for the fact that none of the claims composing it were probated against the estate, and in any event there was no allegation nor any proof whatever that said amounts so deducted or any part of either of them was ever allowed or paid by the adminis-tratrix out of the assets with which she was charged. The administratrix should of course have been charged in the probate court with the entire estate, and the debts due upon the goods and cotton, and all others regularly probated, allowed and paid in due course of administration, instead of the deductions being made and these debts paid as they were.

The settlements showing all these matters, however, were made and duly approved and confirmed by the probate court, and are judgments of that court which could have been appealed from if incorrect. *McLeod* v. *Griffis,* 51 Ark. 1; *Jones* v. *Graham,* 36 Ark. 383; *Dyer* v. *Jacoway,* 42 Ark. 186.

"The complaint contains no averment that the allowances made to the administratrix upon her settlement were obtained by any misrepresentation or deception practiced upon the court. The facts, so far as anything to the contrary appears, were all before the court and understood by it, and its decisions fairly made." *Mock* v. *Pleasants,* 34 Ark. 72.

In *McLeod* v. *Griffis, supra,* at pages 10, 11, the court said:

"It is plain, however, that whatever matter the probate court has passed upon cannot be assigned in the chancery court as fraudulent or as the result of accident or mistake unless upon the statement of some fact or circumstance not considered by the court. The identical issues decided by the probate court can not be retried and reversed by the chancery court in this proceeding, and where this is manifest the court should refuse to take jurisdiction. The difficulty is almost peculiar to judg-

ments confirming administrator's items of debit and credit, and the items have no necessary connection with each other, but an examination and confirmation of the setlement is the judgment of the probate court as to each separate item as much as it is to the settlement as a whole. We are not prepared to say that the chancery court would not have jurisdiction to set aside as a whole the settlement accounts of an administrator, but it would be only upon an impeachment of the settlements as a whole. It must be upon fraud or accident going to or affecting the entire action of the probate court and in which the court has been the victim of the fraud or the accident." See also *Mock* v. *Pleasants, supra; Scott* v. *Penn,* 68 Ark. 492; *Jones* v. *Graham,* 36 Ark. 391.

The proof failed to show any fraud, accident or mistake that would sustain specific charges amounting to a cause of action as held by the chancellor, and the decree is affirmed.